All right, call the third case this afternoon, Richardson v. Donovan. Mr. Hodge, good afternoon. Good afternoon, Your Honor. How are you? Hello, my name is Mark Hodge. I'm here on behalf of the Government of the British Virgin Islands. Here with me today is Maya Barry, Crown Counsel for the British Virgin Islands Government, and I'd like to reserve five minutes for rebuttal. Yes, sir. May it please the Court. This case is unprecedented on multiple levels. An unprecedented denial of an unserved foreign sovereign under the FSIA, denial of their immunity under the FSIA, an unprecedented affirmative finding of subject matter jurisdiction before the defendant has been served, a refusal to acknowledge evidence of another court's judgment when the opposing party expressly admits its authenticity, a ruling on a contested issue of fact without an evidentiary hearing based exclusively upon expert evidence. The pre-service rulings were clearly improper, Your Honor. Let's talk about the jurisdictional issue. That's the threshold issue, isn't it? Are we talking about immunity or jurisdiction? Jurisdiction. Well, I'd say, Your Honor, that the threshold issue is immunity under 1605. Before you get to jurisdiction under, excuse me, 1330, you first have to have an exception to immunity under 1605. And that is why deciding this before anybody was served was improper. Were the cases against British Virgin Islands the boat that had a collision with the plaintiffs in this case, or the claim collision? I'm sorry. What was the case against? The case is the complaint named the Attorney General of the British Virgin Islands, but apparently from what the court's order said at trial, it was clarified that they were looking to get paid by the government of the British Virgin Islands. And it was a customs vessel. Do you contest that there is an exception to the foreign, the FSIA that exists here? Do you challenge the existence of the exception the district judge found? Absolutely. Absolutely. On what basis? On what basis? Certainly. The key issue here, and now we're going past the improper rulings that were all entered pre-service, post-service, all the decisions were based upon ex parte testimony collected at that default bench trial before the defendant was served. Did they ex parte? Testimony from the default bench trial before the defendant was served. But it was a determination by a magistrate judge that that service had been proper. The magistrate judge may have been wrong, but it's not like there was no effort to serve. That doesn't mean that they were served. That doesn't make the default bench trial a valid trial. Isn't this without prejudice in the sense that subject matter jurisdiction is always open until a final judgment? Then you're talking about an advisory opinion, Your Honor, which no federal court is supposed to be issuing advisory opinions. I think it's advisory. I mean, subject matter jurisdiction can be determined at any time in the proceedings. The court can say we have no subject matter jurisdiction. But immunity cannot, Your Honor. Immunity cannot be determined before the defendant has been served under the FSIA because the very first exception under the FSIA incorporates the possibility of an implicit waiver. And the House Report 94-1487 specifically stated that an implicit waiver would include a situation where a foreign state has filed a responsive pleading and an action without raising the defense of sovereign immunity. Under the Foreign Sovereign Immunities Act, if the claim is that the foreign sovereign committed a tort, then it is up to the foreign sovereign to say, well, there might have been a tort, but we don't waive immunity. Therefore, too bad. Is that the way it goes? If it was a tort in the foreign country, it would still be immune. And that's what we're talking about here. But if it's a tort in the United States, they're not immune. Right. Is that right? Yes, but the point is... So if the tort is in the United States as opposed to the British Virgin Islands, then there's no immunity issue. Right. But isn't there an issue as to where the tort occurred? Yes. But the issue is not one that can be resolved by looking at additional evidence offered by the plaintiff because it's decided by judicial admissions and the criminal conviction. Well, the criminal... So the issue is, we don't know, the court has not determined where the tort occurred, but regardless of where it occurred, we're not waiving immunity, therefore, that's the end of the case? I'm sorry, I don't understand the question. The issue of where the tort occurred is still open. You dispute that it occurred in the United States. The plaintiffs say it did occur in the United States. The court has already determined that it happened in the U.S., because otherwise it couldn't find subject matter jurisdiction. Well, the court based the decision on information that was provided to it with very specific coordinates. It said it happened in the United States, we have subject matter jurisdiction, but that can be disputed. Subject matter jurisdiction still can be disputed. You're talking about immunity. Yes. You're saying, we don't belong in this court at all. Correct. We have not waived immunity. The plaintiffs are saying, yes, but there was a tort committed in the United States. Whether that plays out correctly or not, that's a matter for the court to decide, but you're saying we don't even have to go there. We don't belong in this court at all. Is that correct? In order to make the determination, there was a factual issue. Whether or not this incident occurred in U.S. or BVI waters. And in making that determination, the plaintiffs are bound by their judicial admissions. Yes, I understand that they pled guilty to being... I'm not talking about the guilty plea. I'm saying judicial admissions. In their complaint, in the complaint, it alleges that they were stopped by a BVI customs vessel on December 1, 2007, and arrested on the charge of being in BVI waters. Right. It alleges they were injured in the course of that arrest. We filed a motion to dismiss, attached to which was a copy of the BVI magistrate's record of the guilty pleas and the convictions in their opposition to the motion to dismiss. They admitted they pled guilty. They admitted they paid a fine. Agreed. They agreed. That's not in dispute. But didn't they also take the position that although we were in non-U.S. water, we were injured in U.S. water? No. They alleged that they were never in BVI waters. That's their claim now, is that the whole time they were in U.S. waters. They were in U.S. waters the whole day. They got arrested in U.S. waters for being in BVI waters. The judge found that, yes, you were arrested in U.S. waters, and it is a collateral attack on the factual basis for their criminal conviction. I don't see, Mr. Hodge, that they... I assume they were fined. Yes. It was a fine or a term of imprisonment, and they paid the fine. What was the fine? Like $1,000. It was a different fine for the different people. The smallest fine was for Megan Richardson because she didn't have a captain's license. Why should that be entirely binding? In the case that some people plead guilty to traffic offenses just to get done with it and they have to go back. They get caught in Alabama and they're residents of Mississippi. They may not want to go back. I'll pay the fine so I don't have to return here. I can't plead not guilty, etc. Why should that be binding? For the same reason it's binding in Heck v. Humphrey. If you cannot challenge, if you cannot make a civil suit under section 42 U.S.C. section 1983 against your criminal conviction invalidating one of the factual bases for your criminal conviction in order to seek tort damages, you cannot do it here either. Isn't the distinction here that under Heck v. Humphrey, as I understand what that stands for, but in this case the fact that they may have been injured, if you accept their theory, we were injured in U.S. waters. How is that a collateral attack on their guilty plea? Because the guilty plea was for being in BVI waters illegally. Agreed. Do you see a situation where they could have been in BVI waters illegally but injured in U.S. waters during the course of the transportation? No part of their complaint alleges they were in U.S. waters the whole time. It doesn't allege that they were in BVI waters and floated back into U.S. waters and were injured. If we get past the immunity issue, could you discuss then the issue of where the tort occurred and whether we can proceed with this matter in the district court? Certainly. The judicial admissions, as I was saying, the complaint alleges that they were stopped for being in BVI waters illegally, that the arrest, that their tort and injuries occurred in the course of that arrest, their opposition to the motion to dismiss admitted that they pled guilty and paid a fine on that charge. They supplied very specific coordinates of where their boat was located at the time that the tort, the alleged tort, let's call it, occurred. Couldn't the British Virgin Islands have supplied similar information about where they were stopped? Well, actually, Your Honor, that evidence is why this is such a clear collateral attack on their criminal conviction because their maps, their GPS coordinates, their testimony, the question is, would that evidence, if offered in their criminal case, have constituted a defense to the charge of illegally entering BVI waters? Clearly, yes. We have competing facts in this case. There's only competing facts if they're allowed to step back from a judicial admissions in their complaint and judicial admissions in their opposition to the motion to dismiss and judicial admissions in their brief before this court. Quote, it's a fact that the plaintiff pled guilty to entering BVI waters, close quote, page 37 of Apelli's brief. Quote, plaintiffs are not challenging the content of the pleas, close quote. This is established. They do not get to put in evidence now that's inconsistent with these three facts. Arrested for being in BVI waters, accident in the course of arrest, pled guilty and convicted of that charge. You say it is a criminal offense. That's the way it's categorized in the British Virgin Islands. Illegal entry? In water, yes. Yes. Well, I'm just curious. I would imagine it happens if you don't have the right coordinates or you take the wrong direction. Right, but then that's a defense you can raise in the criminal case. Yes. You know, this is just like Ivers versus U.S., Ninth Circuit, where the gentleman tried to claim after the fact that he didn't know about the need to declare his 30-something thousand dollars strapped to his chest. Right? But he'd already pled guilty and the Ninth Circuit said no. No. Yes, certainly you have a non-fiddless argument you could have raised at the criminal case, but you didn't, and it's too late. That's what happened in Heck v. Humphrey. That's what the First, Second, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Circuits have ruled as well. Why isn't this case more similar to Bower v. O'Hara, which is a Virgin Islands case? I'm sorry, Your Honor, I'm not familiar with the case. Well, that's the case where a fellow had pled guilty to an assault charge, but then when there was a civil action filed after that, the plaintiff tried to use his guilty plea to preclude him from challenging the assault, and he raised instead defense of self-defense. Why does not that control here? That was a case in which the plaintiff was the victim in the criminal case, correct? Plaintiff was the victim in the criminal case. Right. And this case... Filed a lawsuit and tried to use the defendant's guilty plea against him. Right. In this case, the defendant is the state that prosecuted the criminal conviction. Every circuit that's dealt with this, when it's the state that did a criminal conviction, and now a civil suit against the state, right? Heck be Humphrey. And then similar decisions by the 1st, 2nd, 4th, 5th, 7th, 8th, 10th, and 11th Circuits, the 9th Circuit as well, in Ivers v. U.S. If it's the state that got a criminal conviction, you cannot then file a civil suit that inherently needs to disallow one of the factual bases for the criminal conviction. So you can't then apply this here, even though we're talking about not a state, but a foreign sovereign? I would say absolutely. It is a sovereign country that prosecuted someone under their criminal code, gave them due process, and they pled guilty. They were convicted. They have the right to appeal. Do we have to get into the question of whether under British Virgin Islands law, there is a means of collaterally attacking the validity of their conviction? I mean, after all, Heck v. Humphrey and that line of cases, you're not precluded from filing a lawsuit. You have to set aside the conviction. Well, certainly. They can try to set aside their conviction in the BVI, I assume. I'm not an attorney admitted to practice in the BVI. However, any collateral attack would clearly have to be in the BVI. You can't do a collateral attack against a U.S. criminal conviction by filing suit in the BVI. At the end of the day, this is a simple case. If plaintiffs allege they were arrested for being in BVI waters, as they did in their complaint, and if they allege that they were injured in the course of that arrest, and if they admit, as they did in their opposition to the motion to dismiss, that they paid a fine pursuant to a guilty plea on that charge, and on top of that, if the court has provided a formal record of the conviction, the arrest and the tort in the course of that arrest occurred in BVI waters, and the BVI is thus immune under the FSIA, and the case must be dismissed with prejudice. Mr. Hodge, thank you very much. Thank you, sir. Thank you. Good afternoon, Your Honor. Thomas Faber on behalf of plaintiffs and appellees, Megan and Cyril Richardson. We're asking the court to, the defendant is requesting this court reverse the district court's denial of the motion to dismiss, the motion for reconsideration. There's three reasons why the district court's decision is appropriate. Number one is the district court properly determined has subject matter jurisdiction. Let me first address that issue. The issue of subject matter jurisdiction is always in play, and the district court is obligated to take a look to make sure it has subject matter jurisdiction. In making this determination, the court is entitled to look at issues beyond the complaint. In this case, Judge Gomez looked at the affidavit of Cyril Richardson and cited the case of Gotha v. U.S., Third Circuit, Mortenson v. First Federal, also another Third Circuit decision. And in those cases, the district court was absolutely entitled to rely on the affidavit of Cyril Richardson, weigh that affidavit, and making this determination that it had subject matter jurisdiction. Whatever Mr. Hodge very compellingly says, look, you admitted in a court proceeding that you were in the British Virgin Islands, you went to a courtroom, you probably raised your hand and sought to tell the truth, and you admitted that the accident or the torn occurred in the British Virgin Islands. I'm glad you asked that question. There's two things I'd like to cover with the court's permission. First is the actual motion to dismiss, and then is the motion for reconsideration. At the time the motion to dismiss was made, there wasn't some type of docket entry that was provided. And Judge, the district court essentially says is that British Virgin Islands. So what happened is the British Virgin Islands answered the complaint, then they went ahead thereafter and followed the motion to dismiss. Attached to the motion to dismiss was a docket entry, and the British Virgin Islands attempted to argue that docket entry should be given preclusive effect. The district court said, well, you know, number one is it doesn't meet the requirements in order to give preclusive effect. However, let's assume it does. And so what the district court then did is it stepped back, and importantly, it relied on the Bower decision. And the Bower decision essentially says is that a guilty plea or a plea of nolo contendere cannot be given preclusive effect. Now, counsel has talked about this Heck decision. The Heck decision is a lot different. It dealt with a full-on conviction, where it actually went to trial and then went up. That was a situation much different than what we have here. This was not a full-on conviction? What was? Well, this was not a trial, and I do mean, in Heck, there was an actual jury trial or trial following a conviction. A trial you would agree is the same as a plea. Well, that's different, though, because the Bower court distinguishes it. And the Bower court says that a guilty plea should not be given preclusive effect. That is different than the situation in the Heck case, which counsel seems to rely upon. And so for that reason, yes, I think it should be distinguished. The district court relied on the Bower case and said that even if we were to consider this docket entry as having some type of, you know, being an actual judgment itself, that docket entry doesn't get preclusive effect. Why not? I mean, a guilty plea is an admission of the facts that are asserted. This is what happened. I therefore admit to those facts. At the time of the motion dismissal, it wasn't a guilty plea. It was only brought in the motion for reconsideration, and I'll get to that in a moment. But let me address the court's concern. As in the Bower case and other cases talking about not giving preclusive effect, there are other reasons why people plead guilty other than, and in this particular case, I think the facts are pretty clear. On December 1, Ms. Richardson sustained a serious facial and head injury. Within days thereafter, these issues are there. She's in a foreign country. She wants to basically get home. Keep in mind that this case proceeded rather uniquely. The British Virgin Islands government was served, the Attorney General was served, within 120 days of filing the complaint by actually personally serving the Attorney General. What then happened is no response occurred. So then a motion to default occurred. Magistrate Cannon at that point said, I need some more evidence as to where this tort occurred, and that's when Cyril Richardson's affidavit was filed with the nautical map showing the GPS coordinates. The case then proceeded to a bench trial before the district court, and this was, I believe, in 2011. At that time, the district court was able to see photographs of Ms. Richardson's disfiguring injury, a significant injury to her face and to her head. I wouldn't doubt the extent of the injuries, but you glided over my concern that there was an admission of facts as to where this occurred, and there was a statement, I assume, sworn under oath that this happened in the British Virgin Islands. I disagree that there was an admission of fact that this incident occurred in the British Virgin Islands. If I plead guilty, am I not admitting that this is where the incident occurred? That was actually the essence of the charge. Well, the essence of the charge was, and let me just, if I can, is essentially as to being in British Virgin Islands without leave of a customs officer. There's no issue about being in the water. I mean, this is essentially a floating, you know, this is at night, and the international border is not well defined. The actual charge itself is that the individuals were at the bite in Norman Island without leave of an immigration official. They never got to the bite. You're still talking about going into a courtroom and saying, yes, this is what happened. Well, the saying is, yes, we agree. We were in British Virgin Islands waters at some point in time. The charge itself. They were either taken into custody or towed or asked to accompany at the moment of the so-called impact, which presumably was within British Virgin Islands waters. The complaint alleges that the British Virgin Islands customs officers were in U.S. waters under the guise and never admits that they were in BVI waters. At the time, the complaint alleges that the BVI customs officers asked the plaintiff and the other passengers to accompany them back to Tortola to speak to their supervisor. The district court raised an issue in a footnote, its opinion, whether it was even arrested in the first instance. That has not really been established. So what we have is essentially is at 9.15, 9.30 in the evening out in the ocean, customs officers who are armed are asking these individuals, will you come back so we can talk to our supervisor? And they, of course, said yes. And then the boat collision then occurs. So there's an issue whether there's an arrest or not arrest. District court didn't necessarily find that it was arrest. The issue is this, is that, and the district court honed in on the issue clearly. Where did the incident occur? The evidence before the district court is that the incident occurred within U.S. waters. Whether this Richardson, American and Cyril happened to be in BVI waters at some point in time, that's not the issue. The issue becomes is, did the British Virgin Islands government injure the individuals that planked us in U.S. waters so as to allow for an exception under the Federal Sovereign Immunity Act? That would mean that the British Virgin Islands patrol boat entered U.S. waters. That's correct. Struck your client's boat. Struck the boat. Well, the British BVI, our client was a Struck is maybe not the right word, but the boats collided causing her an injury. Correct. Correct. You know, under the Verdlin case, U.S. Supreme Court, and I do want to correct, it's footnote 20. Unfortunately, our brief said footnote 2. That is the most instructive case. What Verdlin basically says is that it's up to the district court to make a determination even before a defendant makes an appearance as to whether or not the Foreign Sovereign Immunity Act does apply. And, in fact, it is mandatory for the district court to make that determination. That's the U.S. Supreme Court asking us to take a look at how the Foreign Sovereign Immunity Act does apply. In this case, the district court, looking at the evidence, said there is sufficient evidence for the tortious act exception. The district court looked at the evidence, looked at the docket entry at the time of the motion to dismiss, and what the docket entry basically said is, as I've indicated before, is at some point in time you went to the bite without clearing or getting leave from the customs officers. It does not address the location of the incident. I understand that your clients came forward with very specific coordinates to show that this incident occurred in U.S. waters. In fact, that's the only evidence. The BVI was well within their right to come with evidence. How did you get these coordinates? I mean, is this GPS? Do you have a record of it, or do you just pick a place on a map and say, this is where the boat was? I'm glad you asked that question. The evidence before the magistrate was the affidavit of Mr. Richardson, who has a 100-ton master's license. Mr. Richardson was born and raised and is very familiar with these waters. Mr. Richardson's affidavit says that the incident occurred due north of Flanagan Island. The GPS coordinates are due north of Flanagan Island, clearly within the U.S. territorial waters, and that's where the GPS coordinates come from. And that's all set forth in Mr. Richardson's affidavit. Coordinates depends on who you ask, I suppose. Well, the only evidence of coordinates is from Mr. Richardson. The BVI failed to produce any evidence whatsoever to challenge where this incident occurred. And, in fact, the district court essentially raised that at several points in time. So here we have the motion dismissed. The district court finds, based upon the evidence before it, that it can't exercise subject matter jurisdiction. The Tortious Act exception to the Federal Sovereign Immunity Act applies. And the docket entry, because that's all it is at the time of the motion dismissed, doesn't meet the requirements to come in because it's not a foreign judgment. But then the district court goes a step further and says, on the Bower decision, even if it were, it's not to be given preclusive effect. Based upon that, the court then denies the motion dismissed. So then the BVI files a motion for reconsideration. Now, under the local rules, they have to do so within 14 days and have to show some type of manifest injustice. What happens here is, is not within 14 days does this quote-unquote evidence show up. The BVI files a one-page document or page-and-a-half document saying, we want to move for reconsideration and provide evidence 30 days down the road. That's not what the rules allow in order to file a motion for reconsideration. What happens is, is then the plaintiffs file a motion to strike, saying you're not filing the local rules. You don't have evidence. There's no basis for your reconsideration. Thirty-plus days later, a couple affidavits are then filed in a reply brief. And this is the affidavit of a magistrate judge and the affidavit of this magistrate Richards, who at the time has only been admitted to the bar for three years. He's filing an affidavit based upon her independent recollection from seven years earlier. This is the basis upon which the BVI government is arguing that there are judgments. Now, the district court says, first of all, this is inappropriate reconsideration. You're attempting to get a second by the apple because these docket entries, so to speak, are not sufficient in order to meet our requirements to be given consideration as judgments. So what you're trying to do now is trying to say that the information you previously had at the time you filed your motion to dismiss, you should have presented better evidence. This is still a matter of subject matter jurisdiction. Do you agree with that? I agree there's always a matter of subject matter jurisdiction. It was before Judge Gomes, I believe it was? Yes. It remains before Judge Gomes or may remain before Judge Gomes. We haven't decided yet. But it's always open. It is always open. And you came forward with coordinates via certification. You satisfied Judge Gomes as to the location of the boat at the time of the tour, the alleged tour, let's say. But they can come back and say, no, no, this is where it happened. We have GPS coordinates that say this happened in the British Royal Generals. Sure they can, but they haven't to date. And as of right now is the only evidence the location is in U.S. waters. As we sit here in the motion dismissed and in the motion for reconsideration, the BVI government has come forth with no evidence whatsoever. There is nothing in the record that suggests that the tortious act occurred anywhere other than in U.S. waters. And that's the state of the record. This is a matter of curiosity on my part. Is there a way that you can electronically pinpoint the location of a vessel without having to ask somebody where do you think it was? With GPS? GPS. Is it recording? It depends on the GPS unit as to whether it can. It's like a cell phone. You can track and pinpoint exactly where it was. Can you do that with a boat? Yes. Within so many feet. Within a few feet. Within, yes, 5, 10, 15 feet. This is not going to be a major problem. You'll be able to tell where the Richardson's boat was, where the Virgin Islands boat was, with very precise GPS coordinates. What we know is we know where the incident occurred. I know we only have one set right now. Correct. You'll be able to tell with very precise numbers exactly where these vessels were. It's not like a cell phone recording, per se. I cannot speak to the fact whether that evidence is preserved or not. All I can tell you, Your Honor, is that the evidence that we have is the experience of Cyril Richardson being born and raised, having a 100-ton master's license, knowing these waters, knowing where the incident occurred. I understand that. But there's a more precise way of determining it. Absolutely. And the fact is, it's interesting, the BVI government came forth with zero evidence as to where this incident occurred. What about their evidence that the injury took place during the arrest? Well, that's the issue. It's a district court question whether this was an arrest or not. Then we get into the whole issue of British versus U.S. law. I mean, was this an arrest? Assuming it was an arrest, were the protections afforded to these individuals? So this is a whole plethora of problems that I think the BVI government has attempting to try to put this docket entry, because that's really what it is at the time of the motion to dismiss, a docket entry to try to say that this should give them preclusive effect. So really what you have is, I'm not sure that it is an arrest, Your Honor, and I'm not sure that counsel's argument that this is incident to an arrest is the appropriate argument. All we know and all we have for the record is this. We know where the incident occurred. It happened in U.S. waters, and that's the exception upon which the district court found. Thank you. We'd ask the court to affirm the ruling of the district court. Thank you, Mr. Freyberg. Mr. Hodge? Thank you, Your Honor. A couple of initial things. There is a distinction between subject matter jurisdiction and immunity. They're two distinct analyses. They're linked a bit when it comes to the Foreign Sovereign Immunities Act, but you do not get to go into this repeatedly. I'm pretty certain if we go back to the district court and I ask Judge Gomez to please give me a second hearing, I'm pretty certain that he would not allow a motion for reconsideration to address the issue of immunity. But in any event, the court did not rely on the affidavit of Cyril Richardson, point one. The court relied upon the ex parte testimony from the default bench trial. And in addition, it relied upon a statement by the magistrate that there was topographical corroboration that the incident occurred in U.S. waters. That's it. There was no mention or even acknowledgment that an affidavit from Cyril Richardson even existed in the court's, any of the court's orders. No reference. With respect to the idea, and I'll clarify here, every argument I made... Can we go back over that again? I'm sorry. Sure. You're saying there's no affidavit from Mr. Richardson concerning... Oh, I see. It cited the ex parte testimony that was never provided to defendants as support for every single decision it made both before and after the defendant was served. In fact, when we were objecting to the fact that the court was using this ex parte trial testimony, the court's response was, well, it's akin to using an affidavit. I'm allowed to use an affidavit. You wouldn't get to cross-examine an affidavit. Well, it's an ex parte affidavit because we weren't present when you took it down and you haven't shared it with us. With respect to that... One of the arguments you make, one of the arguments you make is that there should have been an evident, at least an evidentiary hearing in order to make a determination as to the location of the accident. What additional evidence would you present if there was an evidentiary hearing? If there was an evidentiary hearing, for one, I'd have the Donovan who arrested them, the customs officer, come and testify. But the point is there's no, you're not permitted to get into this throwing out different evidence to contest your criminal conviction. Pointing at cases involving private civil litigants trying to use collateral estoppel is separate and distinct. Go back to Judge Manasky's point. But what evidence would you present if there was a hearing? This is very hypothetical. Yeah. If there was such a hearing, you say that Mr. Donovan would... The customs officer? For sure, we'd be bringing him to testify. How about the location of where this incident occurred as the Richardsons have done with coordinates? Would you not be able to do that? Well, I'd have to talk to Mr. Richardson. I mean, excuse me, to Mr. Donovan. Mr. Donovan. But, again... These are very official. These are official patrol boats, aren't they? Yeah. Very sophisticated vessels, I would assume. I assume, Your Honor. You probably know more about it than I do. I certainly don't. But that's what I'm trying to learn, whether they could not come up with coordinates with all electronics that exist nowadays on water vessels. Well, there'd certainly be more evidence if there was an evidentiary hearing. At the very least... Right. At the very least, there should have been an evidentiary hearing. But in reality, based on the judicial admissions and the criminal conviction, there wasn't allowed to be further evidence presented by the plaintiff that conflicted with those admissions. And I wanted to clarify, every argument I made in my opening statement, none of that relied upon anything that was attached to the reply to the motion for reconsideration. All of that was based upon the allegations of the complaint, the admissions in their opposition to the motion to dismiss, their admissions in their reply brief, excuse me, to their appellee's brief, and the docket, what he's calling a docket sheet. Call it a docket sheet if you will. Under the doctrine of comedy, when you're dealing with evidence of foreign law, you can use a docket sheet. In fact, the U.S. Supreme Court in Washington v. Sickles dealt with two neighboring states where it said, in the courts of this district, the docket stands in the place of or perhaps is the record and receives here all the consideration that is yielded to the formal record in other states. These memorials of their proceedings must be intelligible to the court that preserves them as their only evidence. We cannot, therefore, refuse to them faith and credit. While this is not a full faith and credit situation, the point is even the U.S. Supreme Court has acknowledged that docket sheets are evidence of convictions. And that is what this thing is. It's not, it wasn't simply evidence of a guilty plea. It was evidence of a guilty plea and a sentence. And they admitted in their opposition to the motion to dismiss that they paid the fine identified in the docket entry. So say what you want of it. And lastly, with respect to the idea that whether or not there's an arrest, the district court believed there was an arrest. In its decision vacating default and finding no immunity before the defendant had ever been served, the court said Donovan halted the Richardson's vessel explaining to them that he was doing so because they were in violation of BVI law. Donovan arrested the Richardsons and ordered them to board his BVI-issued vessel. Donovan then attempted to transport the Richardsons back to the BVI Customs Office. While doing so, Donovan caused his vessel to clad with the Richardsons' vessel. The collision resulted in personal injury to the Richardsons. Did the judge dispute that there was an arrest? They just did. I don't dispute that there was an arrest. But they're saying, well, whether or not it's an arrest, and I don't know where the basis for questioning the reality of the arrest, but the district court based this decision on an actual arrest. Mr. Hodge, thank you very much. I appreciate your arguments. Thank you. I'm sorry, did the judge ask you, did you have any other questions? I do not. Thank you, Judge. Thank you. Thank you, Your Honor. Okay, thank you. We'll adjourn until tomorrow morning. Please rise.